George V. Sottong and Lilli C. Sottong v. Commissioner.
Sottong v. Commissioner
Docket No. 412-64.
United States Tax Court
T.C. Memo 1966-268; 1966 Tax Ct. Memo LEXIS 15; 25 T.C.M. (CCH) 1366; T.C.M. (RIA) 66268; December 14, 1966
George V. Sottong, pro se, Box 23, Stuart, Fla. Marshall H. Barkin, for the respondent. RAUM
determined deficiencies in income taxes of petitioners in the amount of $1,694.27 for the year 1958, $100.80 for the year 1959, and $2,216.70 for the year 1960. In determining those deficiencies the Commissioner made numerous adjustments in the taxable income reported in petitioners' returns for those years. Issues raised with respect to many of these adjustments have been settled by stipulation. The remaining issues relate to the tax consequences of sales by petitioners of certain lots, and to deductions for expenses claimed to have been incurred in the operation of an awning business and an alleged boating services business. Findings of Fact Some of the facts have been stipulated, and, as stipulated, are incorporated *16 herein by reference. Petitioners, husband and wife, are residents of Stuart, Florida. They filed joint income tax returns for the years 1958, 1959 and 1960 with the district director of internal revenue, Jacksonville, Florida. George V. Sottong (sometimes hereinafter referred to as the petitioner) was on active duty in the Army for a period of approximately 30 years ending in 1958, when he retired. On December 12, 1955, petitioner and Samuel B. Darlich formed a partnership and purchased an interest in certain real property located in Martin County, Florida (hereinafter sometimes referred to as the Corona del Rio property). In August 1954, a tentative plat of the Corona del Rio property had been drawn, but not filed, on which the property was subdivided into 81 lots. After an unsuccessful attempt to sell the property to Food Fair petitioner and Darlich caused a revised plat to be made in respect of the property. The revised plat subdivided the property into 83 lots; it was approved by the Board of County Commissioners of Martin County, Florida, on May 22, 1956 and filed for record in Plat Book 3, page 43, of the public records of the county on May 23, 1956. Twenty-four of the *17 lots shown on the revised plat were in Block 1, 27 were in Block 2, and 32 were in Block 3. Lots 1, 2, 3 and 4 in each Block were front lots the southern boundaries of which were on State Road A.1.A. The four roads shown on the revised plat have not been accepted by the County by means of a formal resolution, and the final plat is therefore still regarded as "tentative." The Corona del Rio property was acquired by petitioner and his then partner, Darlich, from Julius W. Bercik, for a gross purchase price of $24,000. The contribution by Darlich to the purchase price was approximately $10,000, and the contribution by petitioner was approximately $14,000. As a part of petitioner's contribution to the purchase price, he assumed a $4,464.91 mortgage on a house located on Lot 2 of Block 1 of the property. In consideration of petitioner's assumption of the mortgage, which resulted in an excess contribution by him to the purchase price, Darlich transferred his interests in Lots 1, 2, 3 and 4 of Block 1 and the house on Lot 2 of Block 1 to petitioner in 1956 and thereafter those lots were owned outright by petitioner and were not partnership property. In February of 1956, petitioner and *18 Darlich entered into an "agreement for deed" which provided for the sale of Lots 1, 2, 3 and 4 of Block 2 and Lots 1, 2, 3, and 4 of Block 3 to Coons, Koch & Downing, Inc., of Buffalo, New York. The sales contract entered into by the parties to this sale provided for a sales price of $13,957 to be paid $180 per month beginning April 1, 1956, and that "monthly payments shall be made to George V. Sottong, P.O. Box 23, Stuart, Florida." On March 9, 1956, petitioner and Darlich entered into a written agreement with respect to their interests in various joint investments or ventures, including the Corona del Rio property. Petitioner wrote a letter to Darlich under date of July 23, 1956, which read, in part, as follows: I note and am delighted of course that you sold lots # 20 and 21 of Block 1 to Lindy for $20.00 per foot. But I do not think we can expect to get this price for all. Please tell me what we should get for the overall on single lot purchases. How much for each lot. What about the road - Darlich Road, are we going to do anything about it? Also Amy and Silvia Roads. What about the grading? Please answer these questions and maybe we can work out something with Nelson or *19 some other real estate agent. I do not believe anyone will be interested until we do or at least have a firm commitment. I have a number of prople interested in purchasing lots but I must know the answers to the above before I can do anything. On December 3, 1956, petitioner transferred his 50 percent interest in Lots 6, 7, 8 and 9 of Block 2 to Darlich in exchange for Darlich's 50 percent interest in Lots 5, 6, 23, and 24 of Block 1. As a result of the aforementioned transactions, petitioner, on December 3, 1956, owned individually Lots 1, 2, 3, 4, 5, 6, 23 and 24 of Block 1; Darlich owned Lots 6, 7, 8 and 9 of Block 2; 8 lots had been sold; and 63 lots were held jointly by petitioner and Darlich. On February 7, 1957, Darlich transferred his interest in the 63 jointly-held lots to the petitioner so that petitioner thereafter held individually in his own name 71 of the Corona del Rio lots. The consideration, if any, for such transfer is not disclosed by the record. Expenses incurred by petitioner and Darlich in conection with the sale to Coons, Koch & Downing, Inc. and the development, platting and dedication of the Corona del Rio property were as follows: Date
Payee
Nature of Expenditure
Amount
2-1956
Thomas Thurlow, Esq.
Legal fees on sale to
Coons, Koch and
Downing, Inc.
$ 532.98
3-1956
Stinson & Associates
Engineering services
1,050.00
3-1956
Stafford & Brock
Surveying and platting
809.00
1956
Unknown
Palm trees, etc.
390.00
1956
Luckhardt Construction
1000-ft. road (Sottong
1,500.00
Rd.)
Co.
1957
R. Zarnits
Clearing lots
200.00
1956-59
Abstract & Title Ins. Co.
Abstract and title work
267.00
*20 The Commissioner determined that petitioner's cost basis in the eight front lots sold to Coons, Koch & Downing, Inc. in 1956 was $600 per lot (not contested by petitioner), and that petitioner's cost basis for each of the 71 lots remaining after dissolution of the partnership was $274.42. Such determination for the 71 lots reflected not only the original investment in the property but also undertook to take into account the elimination of the lots sold to Coons, Koch & Downing, Inc., as well as certain adjustments such as the expenditures made for improvements to the property. The Commissioner also determined that the front lots sold during the taxable years (Lots 1, 3 and 4 of Block 1) had a cost basis of $600 per lot, [1] and that the house on front lot 2 of Block 1 (together with that lot) had a cost basis of $8,686.09. Petitioner placed or had placed on the Corona del Rio property a sign which read as follows: *21 YOUR TERMS LARGE HOMESITES 75feet X 140feet DISCOUNT FOR CASH Inquire at House or Phone Owner Stuart (a telephone number) The telephone number in Stuart appearing on the sign was that of the petitioners. This sign was on the property during the taxable years 1958, 1959 and 1960. Petitioner is not now, and has never been, a licensed real estate broker. In petitioners' income tax returns for the years 1958, 1959 and 1960, gains realized and losses sustained from sales and exchanges of lots on the Corona del Rio property were reported as follows: Cost (incl.
Cost of
Date
Description
Sale)
Sales Price
Gain
2-10-56
Lots 1, 2, 3
$ 2,755.92
$14,000.00
$11,244.08
& 4, Blk. 2
Lots 1, 2, 3
$ 2,755.92
$14,000.00
$11,244.08
& 4, Blk. 3
1958
Lots 3, 4 &
1,063.47
4,950.00
3,886.53
5, Blk. 1
1958
Lot 23, Blk.
344.49
1,450.00
1,105.51 [2]
1
1958
Lots 1 & 24,
741.63
3,550.00
2,808.37 [1]
Blk. 1
1959
Lot 2, Blk. 1
12,000.00
7,000.00
(5,000.00)
1959
Lot 18, Blk.
838.98
1,350.00
511.02
1
1959
Lots 1 & 24
741.63
3,550.00
2,808.37 [1]
Blk. 1
1960
Lots 14, 15,
16 & 17,
Blk. 1
712.93
1,000.00
287.07
1960
Lots 12 & 13,
1,377.96
4,500.00
3,122.04
Blk. 2
One-half 1958
taken in 1959
Net Gain for
Year
Fifty Percent
Thereof
Included in
Income
*22 Date
1958
1959
1960
2-10-56
$11,244.08
$11,244.08
1958
3,886.53
1958
1958
1959
($5,000.00)
1959
511.02
1959
2,808.37
1960
287.07
1960
3,122.04
(7,565.31)
7,565.31
$ 7,565.31
$5,884.70
$3,409.11
$ 3,782.66
$2,942.35
$1,704.56
In the deficiency notice, the Commissioner determined that the petitioners' income from sales and exchanges of lots on the Corona del Rio property during the years 1958, 1959 and 1960 was as follows: Sales
Date
Description
Cost
Price
2-10-58
8 Lots (1/2 interest)
$2,400.00
$6,978.50
4-22-58
Lots 3 & 4, Blk. 1
1,200.00
3,222.75
Lot 5, Blk. 1
274.42
1,450.00
6-28-58
Lots 1 & 24, Blk. 1
874.42
3,550.00
1958
Lot 23, Blk. 1
274.42
1,450.00
7-14-59
Lot 2, Blk. 1 & House
8,686.09
7,000.00
6-30-59
Lot 18, Blk. 1 *
274.42
1,350.00
4- 8-60
Lots 12 & 13, Blk. 2; Lots
16 & 17, Blk. 1
1,097.68
4,500.00
8-16-60
Lots 14 & 15, Blk. 1
548.84
2,000.00
Ordinary Income From Sale of Lots
*23 Date
Gain
1958
1959
1960
2-10-58
$4,578.50
$2,160.00
$ 540.00
4-22-58
2,022.75
$2,022.75
1,175.58
1,175.58
6-28-58
2,675.58
2,675.58
1958
1,175.58
1,175.58
7-14-59
(1,686.09)
(1,686.09)
6-30-59
1,075.58
1,075.58
4- 8-60
3,402.32
3,402.32
8-16-60
1,451.16
1,451.16
$7,186.74
($ 70.51)
$6,876.23
The Corona del Rio subdivision lots were held by petitioner primarily for sale to customers in the ordinary course of trade or business. During 1951 petitioner obtained a United States Coast Guard License to Operate or Navigate Passenger Carrying Vessels and has continued to be so licensed to the present time. During March or April, 1958, petitioner registered under the Florida Fictitious Name Statute, Section 865.09, Florida Statutes Annotated, to engage in business under the name "BOATING SERVICES". On August 9, 1959, petitioner became a franchised dealer (licensee) for Palm Beach Products Co., a dealer in awnings and awning supplies. Petitioner *24 maintained a bank account with the First National Bank of Stuart in the name of "Boating Service by George V. Sottong, Box 23, Stuart, Florida". Petitioner and Darlich owned equal interests in a 42-foot boat known as "Suntanner II" until early in 1959, when petitioner acquired full ownership thereof. In the latter part of 1959, petitioner sold that boat for cash and a 26-foot boat; the 26-foot boat was subsequently used as a trade-in on the purchase, with cash, of a 32-foot boat. On August 24, 1960, petitioner received a United States Coast Guard Auxiliary Qualified Instructor Certificate On Schedule C, Profit (or Loss) from Business or Profession, of petitioners' returns for the years 1958, 1959 and 1960, petitioner reported a loss from a business activity "Boating, etc." under the business name "BOATING SERVICES" in the following amounts: 1958 *
1959
1960
Receipts
$0
$1,117.35
$1,396.94
Less: Merchandise Purchased
0
462.66
510.71
Cost of Labor
0
0
314.48
Gross profit
$0
$ 654.69
$ 571.75
Less: Expenses
898.69
2,125.13
1,898.83
Net Profit (Loss)
($898.69)
($1,470.44)
($1,327.08)
The receipts *25 and merchandise purchases relate solely to the operation by petitioner of the awning business, and the Commissioner allowed the amounts claimed for merchandise purchases in 1959 and 1960 in determining the deficiencies for those years. In determining the deficiencies the Commissioner disallowed the amounts of $898.69, $2,125.13 and $2,213.31 claimed for expenses on petitioners' returns for the years 1958, 1959 and 1960, on the ground that they represented nondeductible expenses. The details of the claimed expenditures which were disallowed are as follows: Item
1958
1959
1960
Cost of labor
$ $ $ 314.48
Contract
25.00
Salaries and wages
272.12
196.46
Taxes and licenses
30.20
20.75
Repairs (boat)
430.55
393.25
395.00
Gasoline and oil
231.26
752.26
718.47
Office expense
35.11
130.24
86.14
Advertising
15.60
149.96
103.13
Legal expense
13.85
Entertainment
46.17
69.80
Telephone
46.58
57.00
Supplies
30.62
291.52
Pool expense
13.95
Dues
10.00
25.00
60.00
Small tools
10.78
Donations
55.19
Lights and power
20.59
Insurance
34.00
Charts
15.00
Insurance
137.10
$898.69
$2,125.13
$2,213.31
*26 The expenditures incurred by petitioner in connection with the operation of the awning business amounted to $400 in the year 1959 and $600 in the year 1960. Opinion RAUM, Judge: Petitioner appeared on his own behalf, and, despite the Court's efforts (both at the trial and in pretrial conferences) to be of assistance to him, the presentation of his case was marked by considerable vagueness and confusion. Also, his briefs were of little help to the Court, and they relied indiscriminately upon factual materials that were not in the record. To the extent that the issues are herein decided against petitioner, the result is compelled in part at least by failure of proof. 1. The principal issue relates to the proper treatment of petitioner's gain upon sale of lots from the Corona del Rio subdivision. Three matters call for adjudication in this connection: (a) the correct basis of the lots for determining gain; (b) the amount realized on the sale of Lots 14 and 15 of Block 1; and (c) whether the lots were held by petitioner as an investment, as contended by him, so that gains upon sale would be treated as capital gains, or whether such lots were held for sale to customers in the ordinary *27 course of trade or business, as contended by the Government, so that the gains would be treated as ordinary income. (a) Petitioner contests the Commissioner's determination of an adjusted cost basis of $274.42 for each of the lots, apart from the front lots, and argues that these lots, other than the front lots, have a cost basis of $520.29 each. [2] We cannot make a finding that would support petitioner's position. It rests in substantial part upon attributing various expenditures for improvements to certain unidentified lots and then treating the resulting pro rata cost thereof as a component of all of the lots. Thus, petitioner treats a $1,020 "J. A. Stimson" expenditure [3] as applicable to only 21 lots, resulting in a pro rata expenditure of $48.57 for each such lot. Yet he adds $48.57 to the basis of each of the 71 lots in question. *28 Petitioner's method is unacceptable for at least two reasons. In the first place, there is nothing in the record to show that this expenditure related to only 21 lots. And in the second place, it would be entirely incorrect to add $48.57 as a component to the basis of all 71 lots, including the 50 lots which allegedly were not benefited by this expenditure. The net result of petitioner's method would be to add a total of 71 times $48.57, or $3,448.47, to the basis of all 71 lots in respect of an expenditure of only $1,020. Obviously, such method is fatally defective. We need not dwell upon other unsupportable aspects of petitioner's position on this issue. Suffice it to say he has not shown error in the Commissioner's determination that would operate to his benefit in this connection. [4] Accordingly, we approve the Commissioner's finding of an adjusted basis of $274.42 for each of the lots in controversy. *29 (b) The Commissioner determined that the sales price of Lots 14 and 15 of Block 1 was $2,000. Petitioner contends that the correct price was $1,000 for both lots. He produced no evidence at the trial to establish error in the Commissioner's determination on this issue, and it must therefore be resolved against him for failure of proof. (c) Finally, we must decide whether the gains or losses on sale of the lots are to be treated as gains or losses on sale of capital assets. This depends upon whether the lots were held by petitioner primarily for sale to customers in the ordinary course of trade or business. If they were so held, and petitioner contends they were not, they would not qualify as capital assets under section 1221(1) of the Internal Revenue Code of 1954. In Malat v. Riddell, 383 U.S. 569, 572, it was held that "'primarily' means 'of first importance' or 'principally'." But it is also clear that there is nothing in section 1221(1) to indicate "that sales to a restricted number of customers are not to be considered as sales to customers." Patterson v. Belcher, 302 F. 2d 289, 294 (C.A. 5). The question is basically one *30 of fact, and among the factors often considered are the purpose for which the property was acquired, the frequency and continuity of sales, and the activity of the seller in improving and selling the property. However, no one factor may be decisive, and each case must be decided in the light of its particular facts. See Wellesley A. Ayling, 32 T.C. 704, 708. We need hardly add, of course, that the burden is upon petitioner. We think that although the matter may not be entirely free from doubt, the record on the whole supports the Commissioner's determination. The attempt to subdivide the property, the making of improvements so as to facilitate sales of individual lots, the placing of a sign thereon, and other evidence of record, strongly suggest that petitioner was holding the property not merely as an investment, but rather in an effort to obtain additional income to supplement his anticipated retirement benefits from the Army. While lots were not being sold in great numbers, we think there was sufficient activity and continuity in the context of this case to justify characterizing the subdivision as a business operation. We hold that petitioners have not proved error *31 in the Commissioner's determination that the property was held for sale to customers in the ordinary course of trade or business during the tax years. 2. During the years 1958, 1959 and 1960 petitioner engaged in some boating activities, but reported no income therefrom. During the latter part of 1959 and in 1960 petitioner engaged in the business of selling awnings and reported the receipt of income from this business in his returns for 1959 and 1960. In his returns for 1958, 1959 and 1960, petitioners claimed deductions for business expenses totalling $898.69 for 1958, $2,125.13 for 1959, and $2,213.31 for 1960. These deductions were disallowed by the Commissioner on the ground that petitioners had not established that the amounts claimed were in fact expended for the designated purposes or that they otherwise constituted deductible expenses. The evidence produced by petitioners to prove that the Commissioner's determination was erroneous was not satisfactory. It did not establish that the boating activities of petitioner in any of the taxable years constituted a business, or that any amounts expended in connection with those activities were business expenses or expenditures *32 made for the production of income. At the trial petitioner testified that the following amounts were expended during the years 1959 and 1960 in connection with the awning business: 1959
1960
Auto expenses
$125.00
$ 500.00
Advertising
149.96
103.13
Entertainment
69.80
137.10
License
30.20
20.75
Office supplies, telephone, in-
surance, etc.
230.24
279.73
$605.20
$1,040.71 No cancelled checks receipts, or other records were produced by petitioner to substantiate these expenditures. We are convinced nevertheless that some expenses were incurred by petitioner in connection with the operation of the awning business, and doing the best we can with the evidence presented and applying the rationale of Cohan v. Commissioner, 39 F. 2d 540, 544 (C.A. 2), we have found as a fact that petitioner incurred deductible expenses in connection with the operation of the awning business in the amount of $400 for the year 1959 and $600 for the year 1960. Petitioner is entitled to the deduction of these amounts as business expenses. The disallowance of the remaining amounts claimed by petitioners as deductions for expenses for those years, and the amount *33 of $898.69 claimed for the year 1958, must be approved. Decision will be entered under Rule 50. Footnotes
1. This appears to be inconsistent with the Commissioner's determination of $274.42 adjusted basis for all 71 lots held by petitioner, but the discrepancy is in petitioner's favor and he does not contest the determination of a $600 cost basis for each front lot.↩
2. Exchange for both - "Lazy Lady" - No cash involved.↩
1. Profit of $2,808.37 was on exchange for pool which cost builder approximately $3,500.00. No cash to seller involved. ↩
*. The stipulated exhibit (Ex. 10-J) showing the Commissioner's determination identifies this as Lot 19, Blk. 1, but this appears to be a typographical error.↩
*. 9-1-58 through 12-31-58↩
2. Petitioner's position is set forth in paragraph 14 of the stipulation of facts. However, his reply brief, although following a similar method of computation, confusingly arrives at a claimed cost basis of $510.79 per lot. ↩
3. This item is apparently the same as the $1.050 expenditure to "Stinson & Associates" stipulated by the parties. The discrepancy is unexplained.↩
4. Our examination of the Commissioner's computation indicates several possible respects in which a revision might be appropriate, but in each such instance the method used by the Commissioner operates to the petitioner's advantage and a revision would would in an even lower basis for each lot.↩